# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| VERN BRASWELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 2:19-cv-02362-TLP-tmp |
| v. | ) | |
| | ) | |
| SHAWN PHILLIPS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER ON PENDING MOTIONS

Petitioner Vern Braswell petitions pro se under 28 U.S.C. § 2254 for a writ of habeas corpus.[1]  (ECF No. 1.)  Respondent Shawn Phillips has filed the record and responded to the petition.  (ECF Nos. 14 & 15.)  Petitioner has filed many motions since then.  Petitioner moves to stay proceedings (ECF No. 24), for an evidentiary hearing or to expand the record (ECF No. 25), to appoint counsel (ECF No. 26), for this Court to release him on bond pending resolution of the habeas petition (ECF Nos. 26 & 43), and for discovery (ECF Nos. 27, 30 & 42).  For the reasons below, the Court **DENIES** these motions.[2]

## BACKGROUND

In December 2005, a jury in Shelby County Criminal Court convicted Petitioner of second-degree murder for killing his wife, Sheila Braswell, by manual strangulation.  (ECF Nos.

---

[1] Petitioner is an inmate at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee.  His Tennessee Department of Correction ("TDOC") prisoner number is 399678.

[2] Petitioner also moves to file a sur-reply to support his petition.  (ECF No. 40.)  The Court **GRANTS** that motion and accepts the sur-reply as filed.  (ECF No. 41.)  Petitioner also moved to supplement two earlier motions with other exhibits.  (ECF No. 31.)  The Court **GRANTS** the motion to supplement and will consider the exhibits when addressing the relevant motions.

1 at PageID 1; 15-15 at PageID 1604; 15-38 at PageID 4097–98.)  At trial, Petitioner claimed

that his wife died accidentally after the pair engaged in erotic asphyxiation.  (ECF Nos. 15-15 at

PageID 1616; 15-38 at PageID 4098.)  The trial court sentenced Petitioner to a prison sentence of

twenty-four years.  (ECF Nos. 1 at PageID 1; 15-15 at PageID 1629; 15-38 at PageID 4098.)

On direct appeal, the Tennessee Court of Criminal Appeals ("TCCA") affirmed

Petitioner's conviction and sentence.  (ECF Nos. 15-15 at PageID 1629; 15-38 at PageID 4098;

*see also State v. Braswell*, No. W2006-01081-CCA-R3-CD, 2008 WL 238014, at *1 (Tenn.

Crim. App. Jan. 28, 2008), *perm. app. denied* (Tenn. Aug. 25, 2008).)  Petitioner then sought

post-conviction relief.  And the TCCA denied his requests for that relief.  (ECF No. 15-38 at

PageID 4098; *see also Braswell v. State*, No. W2016-00912-CCA-R3-PC, 2018 WL 1719443, at

*1 (Tenn. Crim. App. Apr. 9, 2018).)  What is more, the Tennessee Supreme Court denied

Petitioner's application to appeal the TCCA's decision denying post-conviction relief.  (ECF No.

15-41 at PageID 4333.)  Petitioner then filed a habeas petition with this Court in June 2019,

alleging claims of insufficient evidence, ineffective assistance of counsel, and prosecutorial

misconduct.  (ECF No. 1 at PageID 7–15.)  The Court now turns to Petitioner's pending motions

here.

## ANALYSIS

## I.  Motion to Stay Proceedings

Petitioner first moves to stay these proceedings.  (ECF No. 24.)  The motion refers to

"extraordinary developments" in his state case, which Petitioner contends "may likely lead to the

need to amend Petitioner's federal habeas corpus petition."  (*Id.* at PageID 4484.)  Petitioner

claims that he received documents in July 2020 that had gone missing from the case file after his

conviction (before the TCCA took up Petitioner's direct appeal).  (*Id.* at PageID 4485.)

Petitioner asserts that when the documents resurfaced, they included a letter, "which stated that during the investigative phase of Petitioner's case, information was received that backed up Petitioner's trial testimony, however it was suppressed." (*Id.*)  Lastly, Petitioner states that his physician diagnosed him with cancer in September 2020. (*Id.*)

Respondent counters that Petitioner has not shown good cause to stay proceedings. (ECF No. 34 at PageID 4631.)  Respondent points out that Petitioner has not sought leave to amend his petition. (*Id.*)  In reply, Petitioner identifies the missing documents as "character letters of support" and asks the Court to order more investigation into the letters' disappearance from the state court record after his conviction. (ECF No. 37 at PageID 4650–51.)

"Habeas petitioners must exhaust all available state court remedies before proceeding in federal court, and this usually requires that they appeal an adverse decision all the way to the state's court of last resort." *Phillips v. Court of Common Pleas*, 668 F.3d 804, 810 (6th Cir. 2012) (citing *Klein v. Leis*, 548 F.3d 425, 429 n.2 (6th Cir. 2008)).  When a petition contains both exhausted and unexhausted claims, a federal habeas court has authority to stay proceedings while the petitioner raises the unexhausted claims in state court. *See Rhines v. Weber*, 544 U.S. 269, 276–77 (2005).  But this discretion is limited by the "twin purposes" of "encouraging finality" and "streamlining federal habeas proceedings." *Id.*  And as a result, "stay and abeyance should be available only in limited circumstances." *Id.*  "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Wogenstahl v. Mitchell*, 668 F.3d 307, 322 (6th Cir. 2012) (quoting *Rhines*, 544 U.S. at 277); *see also Harris v. Lafler*, 553 F.3d 1028, 1031 (6th Cir. 2009) ("The [exhaustion] requirement is designed to give the States and the state courts a

first look at a habeas petitioner's claims." (citing *Rhines*, 544 U.S. at 273)). Even if a petitioner shows good cause, federal habeas courts cannot grant stays based on "plainly meritless" claims. *Rhines*, 544 U.S. at 277 (citing 28 U.S.C. § 2254(b)(2)).

With all this in mind, the Court finds that Petitioner has not shown enough to warrant a stay of proceedings. For starters, Petitioner's motion is vague. Petitioner states that "extraordinary developments" might lead him to seek leave to amend his petition. (ECF No. 24 at PageID 4484.) But the motion does not explain what claims he seeks to add, and he has not sought leave to amend his petition. The Court will not stay proceedings here while Petitioner tries to exhaust habeas claims he has not bothered to plead in his petition.

Respondent also contends that if Petitioner seeks to assert new claims, he has no available state court remedies to exhaust such claims. (ECF No. 34 at PageID 4631.) And Respondent emphasizes that "Petitioner makes no argument that cause and prejudice exist to excuse the default of this claim." (*Id.* at PageID 4633.) True enough, under Sixth Circuit precedent, "when a petitioner fails to present a claim in state court, but that remedy is no longer available to him, the claim is technically exhausted, yet procedurally defaulted." *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citing *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012). And "[t]o excuse such a procedural default, a petitioner must show 'cause for the default and prejudice from the asserted error.'" *Id.* at 484 (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)). But remember that Petitioner has not pleaded these claims. Petitioner has not shown that those claims—whether unexhausted or procedurally defaulted—provide a basis to stay proceedings.

At bottom, Petitioner has not shown that a stay is proper or warranted under these circumstances. What is more, the parties here have fully briefed the issues raised in the habeas

petition, and Petitioner then filed various motions since seeking to stay proceedings.  Based on the above, the Court finds that a stay here is improper.  The Court therefore **DENIES** the motion to stay proceedings.

## II.     Motion for Evidentiary Hearing or to Expand the Record

Petitioner next moves for an evidentiary hearing or, in the alternative, to expand the record.  (ECF No. 25.)  Respondent has responded to the motion.  (ECF No. 34.)  The Court will address each request in turn.

### A.     Motion for Evidentiary Hearing

Petitioner first asserts that he has proof of a new claim under *Arizona v. Youngblood*, 488 U.S. 51 (1988), which he asserts "would have changed the outcome of the rulings in [his] collateral attacks on his conviction" and "de facto changed the verdict in [his] trial."  (ECF No. 25 at PageID 4488.)  Petitioner also states that he has proof of a new claim under *Brady v. Maryland*, 373 U.S. 83 (1963), which he asserts "would have changed the verdict in [his] trial." (*Id.*)  Petitioner asserts that the Court should excuse his failure to raise these issues in state court "due to the bad faith by someone's actions that benefited the state and resulted in several incomplete adjudications in state court."  (*Id.*)  Petitioner acknowledges that "there is no vehicle or avenue in state court at this point to adjudicate this claim."  (*Id.*)

Citing *Youngblood*, Petitioner argues that "someone, to the benefit of the state, tampered with the court record of Petitioner by removing documents which crippled Petitioner's collateral attacks on his conviction in which he would have otherwise likely prevailed."  (*Id.* at PageID 4489.)  And citing *Brady*, Petitioner argues that "he should be allowed to present newly discovered evidence . . . that the State withheld material evidence from Petitioner during discovery in state court."  (*Id.*)

Petitioner asserts that an unknown person mailed him an apology letter and "original documents which had been missing from the official court record since Petitioner was convicted" in 2005.  (ECF Nos. 25 at PageID 4490; 25-1 at PageID 4510–11.)  According to Petitioner, the anonymous letter states that someone removed the documents from the court record to sabotage Petitioner's chances on appeal.  (ECF No. 25 at PageID 4490.)  The "missing documents" are nine "character letters" submitted to the trial court judge in May 2005 to support Petitioner's request for release on bond.[3]  (*Id.* at PageID 4496.)  Petitioner states that the letters and "portions of Petitioner's sentencing files . . . vanished from Petitioner's court record" before his direct appeal to the TCCA.  (*Id.*)

The anonymous letter also describes a "sealed envelope" discovered in the prosecution's file.  The letter then implies the envelope contained the missing documents here.  (*Id.*)  Petitioner claims that in 2011, "a sealed envelope bearing the initials of Amy Weirich was discovered in the DA's investigative files of the Petitioner's case."  (*Id.*)  According to Petitioner, the anonymous letter insinuates that the sealed envelope contained "the character letters along with vast amounts of exculpatory evidence."  (*Id.* at PageID 4504.)

Petitioner asserts that his character and reputation became the most contested issue at trial and a main argument on direct appeal.  (*Id.* at PageID 4500.)  And he contends that had he been able to present these character letters during appellate review, this would have caused the

---

[3] Petitioner provided copies of the letters and declarations from four of the individuals who authored them.  (ECF No. 25-1 at PageID 4512–25.)  Each declaration states that the attached document is the character letter that individual authored in May 2005.  (*Id.* at PageID 4522–25.)  Petitioner also attached a forensic document examination report related to the character letters.  (*Id.* at PageID 4526–27.)  Petitioner also included a declaration from his aunt, Linda Grandberry, who stated that she helped obtain the character letters.  (ECF No. 31-1 at PageID 4613.)  Grandberry stated that she mailed some letters to the judge and that some authors mailed their letters themselves.  (*Id.*)

Tennessee Court of Criminal Appeals ("TCCA") to grant him a new trial or reduce his sentence. (*Id.* at PageID 4501.)  Petitioner contends that these letters would have rehabilitated him from the attacks on his character.  (*Id.* at PageID 4501–02.)  And so Petitioner asserts that this Court needs to conduct an evidentiary hearing to adjudicate this issue because there is no vehicle or avenue to bring it in state court.  (*Id.* at PageID 4491.)

### i.      Legal Standard for Evidentiary Hearing

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 permits a federal court to grant a state prisoner's application for a writ of habeas corpus.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  That said, § 2254 also limits the authority of federal habeas courts to grant an evidentiary hearing and to consider new evidence. *See id.* at 183; *see also Cornelison v. Motley*, 395 F. App'x 268, 272 (6th Cir. 2010).

Under § 2254, a federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  If the state prisoner seeks federal habeas relief on a claim "that was adjudicated on the merits in State court proceedings," that claim falls under 28 U.S.C. § 2254(d).  And when considering claims under that provision, federal habeas courts cannot consider new evidence.  *See Pinholster*, 563 U.S. at 181 ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); *see also Sheppard v. Bagley*, 657 F.3d 338, 344 (6th Cir. 2011) ("[T]he plain text of [§ 2254](d)(2) . . . looks only to the evidence presented in the state-court proceeding."  (citing *Pinholster*, 564 U.S. at 185 n.7)).

As a result, "district courts are precluded from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits

with respect to the claim at issue." *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013)

(citing *Pinholster*, 563 U.S. at 184–85).  For all that however, if the state court never adjudicated

the claim on the merits, that claim does not fall under § 2254(d).  *Pinholster*, 63 U.S. at 185–86;

*see also Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011).

And when a state court has not adjudicated a claim on the merits, "a federal habeas court

may order an evidentiary hearing, provided the threshold standards for admitting new evidence

in federal district court are met[.]"  *Robinson*, 663 F.3d at 823 (citing 28 U.S.C. § 2254(e)(2));

*see also Pinholster*, 563 U.S. at 185 ("Section 2254(e)(2) continues to have force where §

2254(d)(1) does not bar federal habeas relief.").  Under § 2254(e)(2), a federal habeas court

cannot hold an evidentiary hearing on a claim "[i]f the applicant has failed to develop the factual

basis of a claim in State court proceedings," unless:

> (A) the claim relies on—
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

This provision limits "the discretion of federal habeas courts to take new evidence in an

evidentiary hearing."  *Pinholster*, 563 U.S. at 185 (citing *Schriro v. Landrigan*, 550 U.S. 465,

473 (2007)).  In other words, a petitioner's diligence in state court affects his ability to raise an

issue in federal court later.  As the Sixth Circuit explained, "a petitioner who was not diligent in

developing the factual basis of his claim cannot obtain a federal evidentiary hearing with respect

to that claim unless he meets the conditions set forth in § 2254(e)(2)(B)." *Sheppard v. Bagley*, 657 F.3d 338, 343 (6th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 420, 437 (2000)).  But if the petitioner shows diligence—that he developed the factual basis of the claim during the state court proceedings—then "[t]he strictures of § 2254(e)(2)(A)-(B) do not apply." *Robinson*, 663 F.3d at 824 (citing *Williams*, 529 U.S. at 432).  "Where an applicant has been diligent, the decision to grant an evidentiary hearing is left to the district court's sound discretion." *Id.* (citing *Landrigan*, 550 U.S. at 473).

And so the bottom line is that Petitioner must either satisfy § 2254(e)(2) or show diligence in developing the factual basis of his claims in state court.  "Diligence for purposes of § 2254(e)(2) depends upon 'whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in the state court.'" *McAdoo v. Elo*, 365 F.3d 487, 500 (6th Cir. 2004) (quoting *Williams*, 529 U.S. at 435).  "A petitioner has not 'failed' to develop the record in the manner contemplated by this subsection 'where he was unable to develop his claim in state court despite diligent effort.'"  *Clark v. Nagy*, 934 F.3d 483, 491 n.2 (6th Cir. 2019) (quoting *Williams*, 529 U.S. at 437).

### ii.    Analysis of Petitioner's Request for an Evidentiary Hearing

As stated above, Petitioner asserts that he has proof of new claims under *Youngblood* and *Brady*.  (ECF No. 25 at PageID 4488.)  But Petitioner did not include in his petition any allegations about the missing character letters or the prosecution withholding the contents of the sealed envelope.[4]  And Petitioner has not moved to amend his petition to add such claims.  So Petitioner's request for an evidentiary hearing does not relate to any claim properly pleaded in

---

[4] The petition alleges a *Brady* violation related to a witness statement from Karen Taylor.  (ECF No. 1-1 at PageID 98–106.)

the petition under Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules").  And Petitioner is not entitled to an evidentiary hearing on claims he did not plead.

What is more, Petitioner alleged a *Brady* violation related to the "sealed envelope" in his state court post-conviction proceedings.  (ECF No. 15-38 at PageID 4174–82.)  And Respondent asserts that because the TCCA adjudicated that claim on the merits, this Court's review is limited to the state court record.  (ECF No. 34 at PageID 4629.)  As stated above, if Petitioner is seeking to challenge an "adjudication on the merits" by the TCCA under § 2254(d), this Court cannot consider new evidence.  *See Pinholster*, 563 U.S. at 181; *Sheppard*, 657 F.3d at 344.

Alternatively, if Petitioner seeks to assert a claim the state court did not adjudicate on the merits, he must either satisfy § 2254(e)(2) or show diligence in developing the factual basis of his claims in state court.  *Sheppard*, 657 F.3d at 343; *Robinson*, 663 F.3d at 824.  If § 2254(e)(2) applies, Petitioner is not entitled to an evidentiary hearing.  Petitioner cannot show that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(B).

For starters, Petitioner does not establish that the evidence, if viewed by a reasonable factfinder, would have barred a guilty verdict.  The only specific documents Petitioner references in his motion are the character letters.[5]  And Petitioner concedes that the character letters went

---

[5] According to Petitioner, the anonymous letter "heavily insinuate[s] that someone . . . disregarded and discarded exculpatory information" other than the character letters.  (ECF No. 25 at PageID 4490.)  But this sort of broad assertion cannot establish by clear and convincing evidence that a constitutional error occurred, let alone that it would have prevented a reasonable factfinder from finding him guilty.  *See* 28 U.S.C. § 2254(e)(2)(B).  As stated by the Sixth Circuit, "bald assertions and conclusory allegations do not provide sufficient ground to warrant

missing after his conviction and that his trial counsel did not present them as evidence.  (ECF

Nos. 24 at PageID 4484; 25 at PageID 4506–07.)

What is more, the evidence Petitioner provides does not demonstrate a constitutional

error, because his allegations do not establish a claim under *Brady* or *Youngblood*.[6]  Under

*Brady*, the government's failure to preserve apparently exculpatory evidence violates due

process.  *United States v. Folad*, 877 F.3d 250, 253 (6th Cir. 2017) (citing *Brady*, 373 U.S. at

87).  And under *Youngblood*, if the government destroys potentially useful evidence in bad faith,

it violates due process.  *Id.* (citing *Youngblood*, 488 U.S. at 57–58).  And for this reason, even if

Petitioner acted diligently in developing the factual basis of his claims in state court, this Court

would not grant his request for an evidentiary hearing on these claims.  *See Robinson*, 663 F.3d

at 824.

A *Brady* claim has three elements: (1) "the evidence at issue must be favorable to the

accused, either because it is exculpatory, or because it is impeaching"; (2) "that evidence must

have been suppressed by the State, either willfully or inadvertently"; and (3) "prejudice must

have ensued."  *Jackson v. City of Cleveland*, 925 F.3d 793, 814 (6th Cir. 2019) (quoting

*Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).  A claim under *Youngblood* also has three

elements: (1) "bad faith by the [government]"; (2) "that the exculpatory value of the evidence

was apparent before its destruction"; and (3) "that the defendant would be unable to obtain

comparable evidence by any other reasonably available means."  *Wilson v. Sheldon*, 874 F.3d

---

requiring . . . an evidentiary hearing."  *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006)
(quoting *Stanford*, 266 F.3d at 460).

[6] Again, the Court limits its analysis to the character letters because Petitioner provides no
allegations about any other specific documents missing from the record.

470, 473 (6th Cir. 2017) (citing *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996); *Youngblood*, 488 U.S. at 57–58).  Petitioner does not meet these elements here.

Even if the character letters are exactly what Petitioner claims, they do not support claims under *Brady* or *Youngblood*.  For starters, they are not exculpatory.  The authors wrote these letters on Petitioner's behalf to convince the trial judge to give him a bond.  While the letters attest to his character, Petitioner has not shown that they are probative of his guilt or innocence.  And as stated above, Petitioner acknowledges that the character letters went missing after his conviction and that his trial counsel did not present them as evidence.  (ECF Nos. 24 at PageID 4484; 25 at PageID 4506–07.)

The Sixth Circuit has held that "where the defendant was 'aware of the essential facts that would enable him to take advantage of the exculpatory evidence,' the government's failure to disclose it did not violate *Brady*."  *Spirko v. Mitchell*, 368 F.3d 603, 610 (6th Cir. 2004) (quoting *United States v. Todd*, 920 F.2d 399, 405 (6th Cir. 1990)); *see also United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991).  And so Petitioner has no *Brady* claim related to the character letters.  Similarly, Petitioner cannot show that he was "unable to obtain comparable evidence by any other reasonably available means."  *See Wilson*, 874 F.3d at 473.  And so Petitioner has no claim under *Youngblood* either.

Based on the above, the Court finds that an evidentiary hearing is not warranted here.  The Court therefore **DENIES** the motion for an evidentiary hearing.

### B.    Motion to Expand the Record

Petitioner alternatively moves to expand the record.  Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules") governs a motion to expand the record.  Habeas Rule 7 says that if a habeas petition is not dismissed, the court "may

direct the parties to expand the record by submitting additional materials relating to the petition."

Habeas Rule 7(a).  What is more, the court "may require that these materials be authenticated."

*Id.*  The Sixth Circuit has held that expanding the record in habeas cases "is not mandatory . . .

and is left to the discretion of the trial judge."  *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir.

1988); *see also Beuke v. Houk*, 537 F.3d 618, 653 (6th Cir. 2008).

Petitioner has not explained the relevance or probative value of the character letters on

any of his claims.  And Petitioner has no apparent means to authenticate the anonymous letter he

received.  Keeping in mind the analysis in the section above, the Court **DENIES** Petitioner's

motion to expand the record.

## III.    Motion for Appointment of Counsel

Petitioner next moves for appointment of counsel.  (ECF No. 26 at PageID 4546.)  He

asserts that he "is in dire need of the assistance of counsel" to conduct a hearing.  (*Id.* at PageID

4563.)  Respondent counters that Petitioner has not shown that the interests of justice require

appointment of counsel.  (ECF No. 34 at PageID 4634.)  Petitioner moved again to appoint

counsel in a recent letter to the Court.  (ECF No. 43 at PageID 4684.)

"A petitioner in a habeas proceeding has no constitutional right to counsel."  *Rogers v.

Skipper*, 811 F. App'x 986, 986 (6th Cir. 2020) (citing *Cobas v. Burgess*, 306 F.3d 441, 444 (6th

Cir. 2002)).  "The decision to appoint counsel for a federal habeas petitioner is within the

discretion of the court and is required only where the interests of justice or due process so

require."  *Id.* (citing 18 U.S.C. § 3006A(a)(2)(B), (g); *Mira v. Marshall*, 806 F.2d 636, 638 (6th

Cir. 1986)).  If a federal habeas court determines that an evidentiary hearing is required, it must

appoint counsel to represent the petitioner.  *See* Habeas Rule 8(c).  Otherwise, "the appointment

of counsel is . . . required only if, given the difficulty of the case and petitioner's ability, the

petitioner could not obtain justice without an attorney." *Rogers*, 811 F. App'x at 986. "The exceptional circumstances justifying the appointment of counsel to represent a prisoner acting pro se in a habeas action occur where a petitioner has made a colorable claim, but lacks the means to adequately investigate, prepare, or present the claim." *Id.*

As stated above, the Court is denying Petitioner's motion for an evidentiary hearing. If the Court later determines that an evidentiary hearing is required, it will appoint counsel to represent Petitioner. Given the posture of this case, the Court finds that there is no need for appointed counsel now. The Court therefore **DENIES** the motions to appoint counsel. As stated above, if an evidentiary hearing occurs, the Court will appoint counsel to represent Petitioner without requiring a motion.

## IV.    Motion for Bond

Petitioner also moves for release on bond to home confinement pending resolution of the habeas petition. (ECF No. 26 at PageID 4563.) His request is largely based on the COVID-19 pandemic. (*Id.* at PageID 4545.) In a recent letter to the Court, Petitioner moves for a hearing to determine his eligibility for bail. (ECF No. 43 at PageID 4684.)

Under limited circumstances, a prisoner may seek release pending the court's review of his habeas petition. *See Pouncy v. Palmer*, 993 F.3d 461, 463 (6th Cir. 2021). "In order to receive bail pending a decision on the merits [of a habeas petition], prisoners must be able to show not only a substantial claim of law based on the facts surrounding the petition but also the existence of 'some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interests of justice.'" *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990) (quoting *Aronson v. May*, 85 S. Ct. 3, 5 (1964) (Douglas, J., in chambers)); *see also Nash v.*

14

*Eberlin*, 437 F.3d 519, 526 n.10 (6th Cir. 2006). But "[t]here will be few occasions where a prisoner will meet this standard." *Dotson*, 900 F.2d at 79; *see also Pouncy*, 993 F.3d at 463.

According to Petitioner his doctor diagnosed him with an aggressive form of prostate cancer in September 2020, placing him in a high-risk group of inmates. (ECF No. 26 at PageID 4546.) Petitioner contends that it is extremely dangerous, potentially even life threatening, for him to remain in prison during the pandemic. (*Id.*) He expresses concerns about the health and safety practices at his prison, the risk of harm, and his mental deterioration during solitary confinement. (*Id.* at PageID 4546–47.) And Petitioner also voices concerns about his cancer diagnosis and treatment, issues with obtaining the COVID-19 vaccine, and his risk of exposure while obtaining treatment.[7] (*Id.* at PageID 4548–60.) Petitioner asserts that, if released on bond, he will receive radiation treatments for cancer in a sterile environment where only his mother, who received the COVID vaccine, lives. (*Id.* at PageID 4545.)

Petitioner argues that he is eligible for minimum trustee status because of his minimum direct security level—a level allegedly consistent with being released to home confinement with an ankle monitor. (*Id.* at PageID 4560.) Petitioner claims that the state court trial judge sentenced him to twenty-four years in prison without parole for a Class A conviction, which carried a sentencing range of fifteen to twenty-five years' imprisonment. (*Id.*) Petitioner contends that he had many mitigators, but the judge sentenced Petitioner to four years above the presumptive midpoint. (*Id.*) And Petitioner argues that, because he has now served over nineteen years in prison, his release would not offend the sentencing structure. (*Id.* at PageID 4561.)

---

[7] According to Petitioner, he had to wait two months after his cancer diagnosis before receiving x-rays. (ECF No. 31-1 at PageID 4614.)

Petitioner acknowledges that as a state prisoner, the federal compassionate release program does not apply to him. (*Id.* at PageID 4561–62.)  But Petitioner then emphasizes that he has served over 75% of his sentence and has a serious medical condition.  (*Id.*)  Petitioner asserts that every morning "he spends the first hour of his day vomiting and retching," and "[t]he second hour of Petitioner's day is spent trying to recover from the pain that the vomiting and retching causes to his cancer[-]stricken body."  (ECF No. 37 at PageID 4652.)  Petitioner asserts that TDOC not only dropped its mask mandate but also its COVID protocols allowed four inmates to die in a five-week period.  (*Id.*)  In a recent letter to the Court, Petitioner also reports recent COVID-19 outbreaks and corresponding lockdowns at the TDOC facility where the state houses him.  (ECF No. 43 at PageID 4684.)  Petitioner claims that he is an "untreated cancer patient" and that "[i]t's a challenge to get treated with radiation because repeated spikes in variants." (*Id.*)

Respondent counters that this Court should not grant bail because Petitioner has not presented a substantial claim based on the facts in his petition and that release over COVID-19 is unrelated to Petitioner's habeas claims.  (ECF No. 34 at PageID 4635–36.)  Respondent contends that Petitioner has not shown a special circumstance that would justify granting bail.  (*Id.*)

The Court acknowledges Petitioner's medical concerns and his apprehension related to the COVID-19 pandemic.  Many courts have recognized the significant health risks the COVID-19 virus has posed to incarcerated populations during the pandemic.  *See*, *e.g.*, *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020).  And yet with the passage of time and widespread access to the vaccine, some courts have found that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."  *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("[T]o the extent prisons do offer some unique challenges, the vaccine now

significantly reduces the risks associated with COVID-19.").  What is more, the infection rate for COVID has dropped considerably.  Petitioner here has articulated a particularized concern about getting the vaccine because of his medical condition.  *See id.*  But the Court need not determine whether Petitioner has shown exceptional circumstances warranting special treatment, because, to qualify for bond, Petitioner must also show "a substantial claim of law based on the facts surrounding the petition." *Dotson*, 900 F.2d at 79.  Petitioner's filings lack a substantial legal claim.

As explained in the sections above, the Court finds that Petitioner has not shown a substantial legal claim in his petition.  Petitioner's conviction by a jury is presumptively valid.  And he has not proved that the facts underlying his petition present a substantial claim so that justice requires his release.  And as a result, this Court finds it improper to grant Petitioner's motion for bond.  At bottom, this is not one of the "rare occasions" in which such a motion should be granted. *See Pouncy*, 993 F.3d at 463.  The Court therefore **DENIES** Petitioner's motion for bond.

## V.   Motions for Discovery

Lastly, Petitioner moves for discovery.  (ECF Nos. 27; 30; 42.)  Habeas petitioners do not have an automatic right to discovery. *See Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009); *see also Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).  Under Habeas Rule 6, which governs discovery in habeas proceedings, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  Habeas Rule 6(a); *see also Cornwell v. Bradshaw*, 559 F.3d 398, 410 (6th Cir. 2009) ("For good cause shown, the district court has the discretion to permit discovery in a habeas proceeding . . . .").  In addition, "[a] party requesting discovery must provide reasons for

17

the request," and "must also include any proposed interrogatories and requests for admission, and must specify any requested documents."  Habeas Rule 6(b).

"A district court has discretion to grant discovery in a habeas case upon a fact specific showing of good cause under Rule 6."  *Stanford*, 266 F.3d at 460 (citing *Bracy v. Gramley*, 520 U.S. 899 (1997); *Byrd v. Collins*, 209 F.3d 486, 515–16 (6th Cir. 2000)).  And "bald assertions" or "conclusory allegations" do not show good cause.  *Id.*  Instead, a petitioner must show that the requested discovery is materially related to claims raised in the habeas petition and likely to "resolve any factual disputes that could entitle [the petitioner] to relief."  *Williams v. Bagley*, 380 F.3d 932, 975 (6th Cir. 2004) (internal quotation marks omitted).  The point of Habeas Rule 6 is to be "consistent" with the Supreme Court's decision in *Harris v. Nelson*, 394 U.S. 286 (1969).  *Bracy v. Gramley*, 520 U.S. 899, 909 (1997).  In *Harris*, the Court stated:

> [W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.

394 U.S. at 300.  With this in mind, the Court now turns to Petitioner's motions for discovery.

Petitioner first seeks to subpoena the West Tennessee Regional Forensic Center for a complete set of autopsy photos, as well as any notes, reports, or test results about the case.  (ECF Nos. 27 at PageID 4596; 30 at PageID 4608.)  Petitioner asserts that after replying to Respondent's answer, he discovered a DNA report from June 2005 (ECF No. 27-1), which according to Petitioner, "appears to exclude Petitioner as the last person to interact with the deceased in Petitioner's case."  (ECF No. 27 at PageID 4596.)  The report, which Petitioner attached to his motion, describes a right-hand fingernail scraping taken from the victim, stating that "[n]o DNA profile was obtained due to insufficient or degraded DNA.  However, the genetic

18

material is from a female individual."[8]  (ECF No. 27-1 at PageID 4598.)  Petitioner asserts that

this supports his claim of actual innocence, because it shows "a woman as the last person to

interact with the deceased."  (ECF No. 27 at PageID 4598.)  Petitioner also states that "[t]he

DNA report was not specifically shared with [him] during pretrial discovery" or "during the

post-conviction evidentiary hearing proceedings."  (*Id.* at PageID 4597.)

　　　Petitioner recently filed another motion seeking discovery.  (ECF No. 42.)  This motion

requests that the Court order "Respondent, the Tennessee Bureau of Investigations, the West

Tennessee Regional Forensic Center, and any other entity or agency in possession of the items

listed below to provide Petitioner with the following":

> I.　　Complete, entire forensic case file/laboratory file/master file including, but
> not limited to:
> 1. Administrative documentation (submittal forms, the complete chain of
> custody, DA's letter requesting analysis, etc.),
> 2. All communications involving case (either by phone, email, or other
> methods - should be recorded in a communications log),
> 3. All drafts, draft completed reports, and/or previous versions of reports
> generated in this case,
> 4. All documentation concerning the review process and changes to
> technical records made during the review process (i.e, handwritten notes)
> made by the reviewer(s),
> 5. Bench notes, worksheets, summary sheets, and or technical records
> created during the analysis of evidence associated with this case,
> 6. High-quality, color copies of all evidence photographs taken,
> 7. High-quality, color copies of all DNA data (electropherograms),
> 8. All raw data (including but not limited to *.fsa or *.hid files) generated
> for the case,
> 9. Mixture interpretation worksheets, if applicable,
> 10. Statistical calculations, if applicable,
> 11. CODIS upload worksheets/documentation, if applicable,
> 12. Any additional testing and reports completed from other forensic units
> (e.g., latent prints).

---

[8] The report also contains results from a left-hand fingernail scraping from the victim, which
states "[n]o DNA profile was obtained due to insufficient or degraded DNA."  (ECF No. 27-1 at
PageID 4598.)  The report does not state whether that genetic material was from a female or
male individual.  (*Id.*)

II.   All laboratory policies/procedures/protocols covering the entire period of
testing and analysis (i.e., start date through most recent administrative
review) including, but not limited to:
1. Quality Assurance policies,
2. CODIS policies (if applicable),
3. Evidence receiving and handling policies,
4. Unit-specific policies.

(ECF No. 42 at PageID 4680.)  Petitioner asserts that he discovered a black and white picture

from the autopsy, which "when taken in conjunction with the DNA/Serology report from

Petitioner's case, appears to support the assertion that Petitioner is likely actually innocent of

causing the death in this case."  (*Id.*). Petitioner states that the photo "shows the genetic DNA

material under the decedent's fingernails."  (*Id.* at at PageID 4681.)

Respondent counters that "Petitioner's own trial testimony belies any claim that he was

not the last person to interact with the victim.  Petitioner indicated that he, his two sons, and the

victims were the only individuals in the house on the night of the victim's murder."  (ECF No. 34

at PageID 4637 (citing ECF No. 15-8 at PageID 1036–39).)  According to Respondent,

"[Petitioner] testified that the victim woke him around 3:00 a.m. and that they moved to the

jacuzzi to have sexual intercourse."  (*Id.* (citing ECF No. 15-8 at PageID 1043–45).)  And

"[Petitioner] said that he left the victim in the bathtub and returned to bed, but he realized at 3:45

a.m. that the victim was not in the bed."  (*Id.* (citing ECF No. 15-8 at PageID 1045–46).)

Respondent concludes, "Petitioner's trial testimony demonstrates that he was the last person to

see the victim alive, and he has not shown good cause to obtain discovery."  (*Id.*)

Respondent also points out that the DNA report does not state that the DNA sample

under the victim's fingernail belonged to the last person to interact with her.  (*Id.* at PageID

4638.)  Indeed, because the DNA sample was "insufficient or degraded," the laboratory could

not generate a DNA profile from it.  (ECF No. 27-1 at PageID 4598.)  In other words, the report

could not even rule out the possibility that the DNA sample belonged to the victim.  Lastly, Respondent emphasizes that a free-standing claim of actual innocence is not cognizable in federal habeas proceedings.  *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007).

Petitioner cites *Waterford v. Washburn*, 455 F. Supp. 3d 579 (M.D. Tenn. 2020), for the proposition that "[t]he absence of a defendant's DNA under a victim's fingernails does not establish their innocence unless there was evidence offered suggesting that the victim scratched her assailant."  (ECF No. 37 at PageID 4656.)  He contends that the State told the jury there was a struggle and that the decedent scratched her assailant.  (*Id.* at PageID 4656–57.)  And so Petitioner concludes that DNA or scientific evidence contradicting the State's theory would entitle him to relief.  (*Id.*)  And Petitioner contends that the State told the jury that this evidence did not exist.  (*Id.* at PageID 4657.)

Petitioner also acknowledges that the Sixth Circuit has said that there is no freestanding actual innocence claim absent allegations of constitutional error at trial.  (*Id.*)  He asserts that his trial counsel performed deficiently if counsel had this evidence and did not use it in opposition to the State's theory at trial leading to constitutional error that had a substantial and injurious effect on the verdict.  (*Id.* at PageID 4657–58.)  Petitioner has not sought leave to amend his petition to add such a claim under Habeas Rule 2.  As a result, Petitioner cannot show that his discovery requests are materially related to a properly pleaded claim.

Even if Petitioner had pleaded an actual innocence claim, he has no right to discovery related to such a claim.  "The Supreme Court has not answered whether freestanding actual innocence claims are cognizable on habeas review."  *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020) (citing *House v. Bell*, 547 U.S. 518, 555 (2006)).  Freestanding "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal

habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  Under *Herrera*, the evidence supporting a potential freestanding actual innocence claim would have to be strong enough to make execution "constitutionally intolerable" despite the conviction being the product of a fair trial.  *Schlup v. Delo*, 513 U.S. 298, 316–317 (1995).  Petitioner would have to convince the habeas court that the new evidence "unquestionably" establishes innocence.  *Id*. at 317.  But the Sixth Circuit has "repeatedly indicated that such claims are not cognizable on habeas." *Smith*, 962 F.3d at 207 (quoting *Cress*, 484 F.3d at 854); s*ee also Muntaser v. Bradshaw*, 429 F. App'x 515, 521 (6th Cir. 2011).  And even if they were, "the petitioner's burden 'would necessarily be extraordinarily high.'"  *Smith*, 962 F.3d at 207 (quoting *Herrera*, 506 U.S. at 417).

Because a freestanding claim of actual innocence is not cognizable, Petitioner has no basis to obtain discovery to support such a claim.  *See id.*  And Petitioner cannot show good cause, because the evidence Petitioner cites does not exonerate him.  The report describes multiple DNA samples, stating that the sample found under the victim's right-hand fingernails belonged to a female.  (ECF No. 27-1.)  The report also describes a DNA sample found under the victim's left-hand fingernails, but the report does not conclude that this sample belonged to a female.  (*Id.*)  And so even if the State had presented evidence that the victim scratched Petitioner, which it did not, the report would not exonerate him.[9]  The photograph does not

---

[9] *Waterford* does nothing to salvage Petitioner's argument.  In that case, the court found that "[t]he absence of a defendant's DNA under a victim's fingernails does not establish her innocence when there was no evidence offered suggesting that the victim scratched her assailant."  *Waterford*, 455 F. Supp. 3d at 619 (internal quotation marks).  The court found that "[i]t was thus not unreasonable for the state court to conclude that the DNA evidence from the victim's fingernails was not so critical to the outcome of the case that its absence rendered the trial fundamentally unfair."  *Id.*  Here, like in *Waterford*, the State did not offer evidence that the victim scratched her assailant.  Petitioner's counsel at the criminal trial argued, based on the

exonerate Petitioner either.  (ECF No. 41 at PageID 4669.)  It is not probative at all on the question of who last saw the victim, let alone who killed her.

What is more, Petitioner's discovery requests are too broad.  And Habeas Rule 6 does not permit a "fishing expedition masquerading as discovery." *Stanford*, 266 F.3d at 460.  Before these motions for discovery, Petitioner had never before asserted another person was present at the time of his wife's death.   At trial, Petitioner argued that his wife died accidentally after they engaged in erotic asphyxiation.  *See Braswell v. State*, 2018 WL 1719443, at *1.  Petitioner never claimed that anyone else was present, let alone that another individual played a role in the victim's death.  *See State v. Braswell*, 2008 WL 238014, at *12 ("Defendant did not contend that he was not present in the house when the victim died, or that anyone else, other than Defendant's two young sons, was present").  The existence of female DNA under one of the victim's fingernails does not exonerate Petitioner.

At bottom, Petitioner's arguments about the DNA report do not establish good cause for permitting discovery.  The Court therefore **DENIES** Petitioner's motions for discovery.

## CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's motion to file a sur-reply (ECF No. 41) and motion to supplement (ECF No. 31).  The Court **DENIES** Petitioner's motion to stay proceedings (ECF No. 24), motion for an evidentiary hearing or to expand the record (ECF No. 25), motion to appoint counsel (ECF No. 26), motions for an order releasing him on bond pending resolution of the habeas petition (ECF Nos. 26; 43), and motions for discovery (ECF Nos. 27; 30; 42).

---

medical examiner's testimony, that there was no evidence of a struggle.  (ECF No. 15-9 at PageID 1176.)  And Petitioner's counsel noted that the victim's fingernails were intact.  (*Id.*)

**SO ORDERED**, this 8th day of March, 2022.

     s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE